UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVON HOWARD BANKS,

                                        Plaintiff,

        v.

THE COUNTY OF WESTCHESTER, et al.

                                        Defendants.

No. 13-CV-5254 (KMK)

OPINION AND ORDER

---

Appearances:

Davon Howard Banks
White Plains, NY
*Pro Se Plaintiff*

Syma B. Funt, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Davon Howard Banks ("Plaintiff"), a former inmate of Westchester

Department of Corrections, filed the instant Complaint pursuant to 42 U.S.C. § 1983 against the

County of Westchester ("County"), Corrections Officer Vega ("Vega"), Corrections Officer

Ficorotta ("Ficorotta"), Sergeant Middleton ("Middleton"), Captain Harris ("Harris"), Sergeant

Andrews ("Andrews"), and Corrections Officer Gibson ("Gibson") (collectively, "Defendants"),

alleging that Defendants engaged in conduct that violated Plaintiff's rights under the Fourth,

Eighth, and Fourteenth Amendments. (Compl. § V (Dkt. No. 2).) Plaintiff also alleges that

Defendants were negligent, engaged in libel, fraud, hate crimes, and discrimination, and violated

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (*See id.*) Before the

Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").  (Mot. to Dismiss ("Mot.") (Dkt. No. 40).)  For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purpose of resolving the instant Motion.

On March 19, 2013, during "the 11 p.m. [to] 7 a.m. shift" at the Westchester County Department of Corrections, Defendant Gibson "smashed [Plaintiff's] hand against [an] iron steel cell door."  (Compl. § II.)  On March 20, 2013, "on the 7 a.m. [to] 3 p.m. shift," Defendant Vega "smashed [Plaintiff's] face on the floor and kicked disinfectant in [his] eyes."  (*Id.*)  During the "3 p.m. [to] 11 p.m." shift on May 7, 2013, Defendant Ficorotta "spit in [Plaintiff's] face and called [him] a nigger," and Defendant Middleton "harass[ed,] . . . attacked . . .[,] and taunted [Plaintiff]."  (*Id.*)  On June 15, 2013, during that same shift, Defendant Harris put Plaintiff in the Special Housing Unit ("SHU") because he "ask[ed] for [his] medication," and Defendant Andrews "stole [Plaintiff's] personal property[,] harass[ed] [him,] stalked [him,] falsified criminal documents[,] and a[ssa]ssinated [Plaintiff's] character maliciously."  (*Id.*)

As a result of these alleged incidents, Plaintiff suffered "a fractured pinky, soft tissue damage, shattered nerves, . . . arthritis[,] [and] los[s] of vision."  (*Id.* § III.)  Plaintiff also alleges that he "had to get [his] eyes flushed" and to get "stitches above [his] eye," in addition to "need[ing] surgery on [his] right hand."  (*Id.*)

Plaintiff filed a grievance against Defendant Harris for "[a]buse of [p]ower," after which Harris "put [Plaintiff] in solitary confinement."  (*Id.* § IV.)  Plaintiff appealed the decision.  (*Id.*)

Plaintiff also alleges that "the other [grievances he filed] were thr[own] away by other [sergeants] and captains." (*Id.*)  Plaintiff informed Defendant Andrews, Sergeant Moore, Defendant Middleton, and Captain Smiley of his claims, but "[t]hey took them and threw them away." (*Id.*)

### B.  Procedural History

Plaintiff filed the instant Complaint on July 26, 2013, along with a request to proceed in forma pauperis.  (Dkt. No. 1.)  Plaintiff's request to proceed in forma pauperis was granted on August 21, 2013.  (Dkt. No. 3.)  Defendants filed their Motion To Dismiss and supporting papers on May 14, 2014.  (Dkt. Nos. 40–42.)  On January 29, 2015, the Court denied without prejudice Defendants' Motion for failure to comply with the Court's individual rules of practice.  (Dkt. No. 64.)  In the meantime, on March 31, 2015, Plaintiff filed his opposition papers in the form of a letter to the Court.  (Dkt. No. 68.)  Defendants re-filed their Motion to Dismiss and filed their reply on May 15, 2015.  (Dkt. Nos. 71–72.)

## II.  Discussion

### A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations, citations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks

omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted)  (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T&M Prot. Res., Inc.*, No. 13-CV-4384, 2014 WL 182341, at *1 n.1 (S.D.N.Y. Jan. 16, 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Disc. Bank of N.Y.*, 199

F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, No. 12-CV-6666, 2013 WL 5863561, at *2 (S.D.N.Y. Oct. 31, 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks removed)).

B.  Analysis

Defendants move to dismiss Plaintiff's Complaint on several grounds.  Defendants argue that Plaintiff fails to state a claim upon which relief may be granted, to allege any constitutional violation by Defendants, and to allege the existence of any policy or practice that caused the alleged harms under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  (*See generally* Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt No. 41).)[1]

---

[1] The Court notes that Defendants do not raise the issue of qualified immunity and, as a result, declines to address it at this stage. *See Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (holding that qualified immunity "is an affirmative defense that must be pled by the official who claims it"); *accord Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) ("[I]t is appropriate to decide the issue of qualified immunity, *when raised*, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss." (emphasis added)), *aff'd*, 751 F.3d 78 (2d Cir. 2014).

### 1.  Eighth Amendment Claims

The Eight Amendment guarantees freedom from "cruel and unusual punishments."  U.S. Const., amend. VIII; *cf. Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."); *Zimmerman v. Seyfert*, No. 03-CV-1389, 2007 WL 2080517, at *23 (N.D.N.Y. July 19, 2007) ("Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmates health or safety.").[2]  Analysis of cruel and unusual punishment claims requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for the conduct.  *See Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *McMillian*, 503 U.S. at 7–8); *see also Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) ("[A] prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence.").

The objective element focuses on the harm done in light of "contemporary standards of decency," *Wright*, 554 F.3d at 268 (internal quotation marks omitted); *see also Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (noting that the analysis is "context specific, turning upon contemporary standards of decency" (internal quotation marks omitted)), and asks whether

---

[2] Though the Complaint does not specify whether Plaintiff was a convicted prisoner or a pretrial detainee at the time of the alleged incidents, his status is of no import for present purposes.  The Second Circuit has held that the legal standard for whether abuse by a prison guard states a constitutional claim under the Eighth Amendment, established by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), appliers to excessive force claims brought under the Fourteenth Amendment, which covers pretrial detainees.  *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999).  In other words, the analysis is the same for pretrial and convicted detainees.

"the deprivation alleged is 'sufficiently serious,' or 'harmful enough,' to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "Some degree of injury is ordinarily required to state a claim of excessive use of force in violation of the Eighth Amendment," *Taylor v. N.Y. Dep't of Corr.*, No. 10-CV-3819, 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012) (brackets and internal quotation marks omitted), though an inmate "need not prove 'significant injury' to make out an excessive force claim," *Griffin*, 193 F.3d at 92. Nevertheless, "a de minimis use of force will rarely suffice to state a constitutional claim." *Romano*, 998 F.2d at 105 (italics omitted).

The subjective element requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (some internal quotations omitted); *see also Vail v. Fischer*, No. 12-CV-1718, 2013 WL 5406637, at *5 (N.D.N.Y. Sept. 25, 2013) (noting that an inmate must plead, "subjectively, that the defendant acted wantonly and in bad faith"). A plaintiff must allege facts, for example, that indicate prison officials used force "maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (internal quotation marks omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (noting this consideration to be "[t]he core judicial inquiry" for an excessive force claim (internal quotation marks omitted)).

### a.  Excessive Force

The instant Complaint alleges that, on clearly identified occasions, Defendant Gibson "smashed [Plaintiff's] hand against [an] iron steel cell door," and Defendant Vega "smashed [his] face on the floor and kicked disinfectant in [his] eyes." (Compl. § II.) While Defendants

argue that Plaintiff's allegations "are vague" and legally insufficient to state a cause of action,

(Defs.' Mem. 5), the Complaint does, in fact, detail when Plaintiff was attacked, by whom, the

precise manner in which he was attacked, and the injuries he suffered as a result of each alleged

attack, (*see* Compl. §§ II–III).   Therefore, as a threshold matter, the Complaint is sufficient on its

face to allow the Court to reach the reasonable conclusion that the Plaintiff has stated a plausible

claim of excessive force.   *See D'Attore v. Cucharella*, No. 12-CV-9, 2012 WL 5601406, at *5–6

(N.D.N.Y. Oct. 3, 2012) (finding the "[c]omplaint is sufficient on its face" where the plaintiff

alleged "when he was attacked, by whom, the precise manner in which he was attacked, the

reason for his attack, and the injuries he suffered as a result of the attack"), *adopted by* 2012 WL

5600374 (N.D.N.Y. Nov. 15, 2012); *De Ponceau v. Bruner*, No. 09-CV-605, 2012 WL 1030415,

at *6 (N.D.N.Y. Feb. 21, 2012) (finding the complaint legally sufficient to state a plausible

excessive force claim where it included the date, identified the assailants, and described the

manner of the attack), *adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012).

        In alleging that his face and hand were "smashed" by Defendants Vega and Gibson, (*see*

Compl. § II), the Complaint puts forth more than a de minimis use of force that parallels the

degree of force found by other courts to be sufficiently serious under the objective prong.   *See,*

*e.g.*, *Santiago v. Westchester Cty.*, No. 13-CV-1886, 2014 WL 2048201, at *5 (S.D.N.Y. May

19, 2014) (finding allegations that a prison official "threw [the] [p]laintiff to the ground, twisted

his arm, [and] picked him up off the ground while squeezing his throat . . . lead to a plausible

inference that the force inflicted was malicious and wanton"); *Taylor v. Wilde*, No. 11-CV-3608,

2012 WL 2860999, at *3 (E.D.N.Y. July 10, 2012) (holding that the "act of 'slamming' . . . is

objectively sufficiently serious" to state a claim for relief under the Eighth Amendment

(alterations and some internal quotation marks omitted)); *Phelan v. Hersh*, No. 10-CV-11, 2011

8

WL 6031940, at *12 (N.D.N.Y. Sept. 13, 2011) ("[T]hough [the] [p]laintiff provides sparse details of the incident, his claim suggests that [the defendant] hit him maliciously, multiple times, and without the good-faith effort to maintain discipline.  This is enough to validly state an excessive force claim . . . ."), *adopted by* 2011 WL 6031071 (N.D.N.Y. Dec. 5, 2011); *Charlton v. N.Y.*, No. 03-CV-8986, 2006 WL 406315, at *7 (S.D.N.Y. Feb. 22, 2006) (finding the act of repeatedly slamming an inmate against a wall sufficient to satisfy the objective prong).  So too does Plaintiff's allegation regarding the use of a chemical agent against him.  *See Lewis v. Clarkstown Police Dep't*, No. 11-CV-2487, 2014 WL 1364934, at *6 (S.D.N.Y. Mar. 31, 2014) (noting that the use of pepper spray and similar chemical agents that inflict a harm of only limited duration may still be deemed excessive depending on the context in which it was used), *adhered to on reconsideration*, 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014); *Adilovic v. Cty. of Westchester*, No. 08-CV-10971, 2011 WL 2893101, at *6 n.12 (S.D.N.Y. July 14, 2011) (noting that the use of chemical agents against inmates "constitutes a significant degree of force and can amount to an excessive use of force" (citation and internal quotation marks omitted)); *Green v. Morse*, No. 00-CV-6533, 2005 WL 1490301, at *3 (W.D.N.Y. June 23, 2005) (finding that a "claim of excessive force" satisfied the objective and subjective tests "based upon what [the] plaintiff maintains was the unauthorized and improper use of chemical agents against him").

Moreover, the fact that Plaintiff suffered injuries as a result Defendants' actions distinguishes this case from others in which the lack of injury has justified dismissal of excessive force claims.  *See, e.g.*, *Boddie*, 105 F.3d at 862 (finding the plaintiff's allegations that he was "bumped, grabbed, elbowed, and pushed" by the defendants did not rise to a level of constitutional significance because the plaintiff did "not maintain that he experienced any pain or injury as a result of the physical contact"); *Chavis v. Chappius*, No. 06-CV-543S, 2015 WL

1472117, at *6 (W.D.N.Y. Mar. 31, 2015) (dismissing an Eighth Amendment claim where the complaint "does not allege any physical injury that occurred as a result of the [defendant's act]"); *Munlyn v. Pietrie*, No. 13-CV-6170, 2014 WL 3695488, at *4 (W.D.N.Y. July 24, 2014) (dismissing an Eighth Amendment claim where the complaint failed to allege "that [the] [p]laintiff suffered harm or physical injury"); *Flemming v. Kemp*, No. 09-CV-1185, 2012 WL 4094196, at *13 (N.D.N.Y. Aug. 30, 2012) (finding insufficient the plaintiff's "allegations that the use of chemical agents was excessive force" where "the use of such chemicals did not cause any harm or pain to [him]"), *adopted by* 2012 WL 4094009 (N.D.N.Y. Sept. 17, 2012). Plaintiff identifies the specific injuries he suffered as a result of the incidents, (*see* Compl. § III), and these allegations of fracture, soft tissue damage, shattered nerves, arthritis, and lost vision themselves imply a use of force that was more than de minimis, *see McMillian*, 503 U.S. at 10 (holding that "the blows directed at [the plaintiff], which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not de minimis for Eighth Amendment purposes" (italics omitted)); *Alston v. Bellerose*, No. 12-CV-147, 2015 WL 4487973, at *11 (D. Conn. July 23, 2015) (finding allegations that the defendants' conduct "caused [the] [p]laintiff pain, injury[,] and unnecessary suffering . . . imply that [their] use of force was more than de minimis" (italics omitted)); *Caldwell v. Winston*, No. 09-CV-580, 2010 WL 4163034, at *5 (N.D.N.Y. July 23, 2010) (finding objective test satisfied where the plaintiff "allege[d] that he was bleeding as a result of the assault and also that he has suffered substantial periods of pain in his neck and sharp pain in his hands"), *adopted sub nom. Caldwell v. Gettmann*, 2010 WL 3430036 (N.D.N.Y. Aug. 27, 2010). That Plaintiff "need[ed] surgery on [his] right hand," and "had to get [his] eyes flushed," (*see* Compl. § II), reinforces the inference that the amount of force used was excessive, *see D'Attore*, 2012 WL 5601406, at *6 (holding that "[t]he severity of the [p]laintiff's injuries,"

for which "he sought medical attention" and received treatment, "supports the reasonable inference that the amount of force used by [the defendant] was excessive"); *Vail*, 2013 WL 5406637, at *6 ("The very nature of the injuries . . . resulting from these actions are strong indications of wanton and malicious conduct.").

Yet, even without such injuries, Defendants' actions could still constitute excessive force because "the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010); *see also Wilkins*, 559 U.S. at 38 (noting that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury"). On the face of the Complaint, it is at least plausible that the force used by Defendants was gratuitous, (*see* Compl. § II), as the allegations suggest there was "no legitimate penological purpose" for Defendants' actions, *Walsh*, 194 F.3d at 49 (internal quotation marks omitted); *see also Sims*, 230 F.3d at 22 (vacating judgment dismissing excessive force claim where corrections officers punched the plaintiff several times "without need or provocation"). The Complaint gives no suggestion that Plaintiff was uncooperative or threatening at the times of the relevant incidents. Thus, the Court cannot say—at the motion to dismiss stage—that this force was applied "in a good faith effort to maintain or restore discipline," rather than "maliciously or sadistically" to cause harm. *Sims*, 230 F.3d at 22.

Plaintiff has pled sufficient factual allegations to state a claim for excessive force against Defendants Vega and Gibson. Accordingly, Defendants' Motion is denied as to this cause of action.

b.  Verbal Harassment

According to the Complaint, Defendant Ficorotta "spit in [Plaintiff's] face and called [him] a nigger," and Defendant Middleton "harass[ed] . . . [and] taunted [him]."  (Compl. § II.) Such allegations, even accepted as true, are not "objectively harmful enough to establish a constitutional violation."  *McMillian*, 503 U.S. at 8 (citation and internal quotation marks omitted).  Indeed, courts have consistently held that "the mere allegation of verbal abuse, however repugnant it may be, does not rise to the level of a constitutional violation and is not cognizable under . . . § 1983."  *Webster v. Fischer*, 694 F. Supp. 2d 163, 187 (N.D.N.Y. 2000), *aff'd* 398 F. App'x 683 (2d Cir. 2010); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) (holding that name-calling without "any appreciable injury" did not violate an inmate's constitutional rights); *Tavares v. City of N.Y.*, No. 08-CV-3782, 2011 WL 5877550, at *7 (S.D.N.Y. Oct. 17, 2011) (reaffirming that verbal harassment by a corrections officer fails to establish an Eighth Amendment violation), *adopted by* 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011).  Along these lines, "[i]ntentional spitting has not been deemed to be a constitutional violation, at least in the prison setting."  *Faccio v. Eggleston*, No. 10-CV-783, 2011 WL 3666588, at *12 (N.D.N.Y. Aug. 22, 2011); *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 348 (N.D.N.Y. 2010) (finding that a corrections officer who spat chewing tobacco in the face of a prisoner did not violate the Eighth Amendment); *Greene v. Mazzuca*, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007) (holding that yelling, spitting at, and threatening an inmate do not "rise to the level at which prevailing doctrine sets the constitutional bar to establish cruel and unusual punishment").

Courts in the Second Circuit have routinely held that "[i]nmates have no constitutional right to be free from harassment," unless it rises to the level of denying an inmate "the minimal

civilized measure of life's necessities." *Zimmerman*, 2007 WL 2080517, at *28 (internal

quotation marks omitted).  Here, however, Plaintiff's allegations of two isolated incidents (as

troubling as they are) fall well below that threshold.  The alleged verbal harassment, "no matter

how inappropriate, unprofessional, or reprehensible it might seem," does not support a

constitutional claim.  *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)

(internal quotation marks omitted).

      As discussed above, establishing an Eighth Amendment claim requires that an inmate

satisfy *both* the objective and subjective tests described.  *See Taylor*, 2012 WL 2469856, at *6.

Thus, because Plaintiff's allegations of verbal abuse fail to satisfy the requirements of the

objective prong, Defendants are entitled to dismissal as to this claim.

### 2.  Fourteenth Amendment Claims

#### a.  Confinement in SHU

      "Prison discipline implicates a liberty interest when it 'imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Ortiz v. McBride*,

380 F.3d 649, 654 (2d Cir. 2004) (per curiam) (*quoting Sandin v. Conner*, 515 U.S. 472, 484

(1995)).  To determine whether an inmate has suffered "atypical and significant hardship," the

court must compare "the conditions imposed upon the inmate . . . with those imposed upon the

rest of the general population of the facility as well as those in administrative and protective

confinement."  *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 605 (S.D.N.Y. 2009); *see also Welch v.

Bartlett*, 196 F.3d 389, 392–93 (2d Cir. 1999) (same).  This assessment should take into account

both the duration and the conditions of the confinement.  *See Arce v. Walker*, 139 F.3d 329, 336

(2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48–49 (2d Cir. 1997).  For example, "[g]enerally,

periods of confinement in SHU lasting fewer than 101 days have been found not to amount to atypical and significant hardship." *Dawkins*, 646 F. Supp. 2d at 606.

Here, however, the Complaint neither notes the duration of Plaintiff's time in SHU nor includes any allegations describing conditions that may have rendered that confinement an atypical and significant hardship.  Plaintiff merely states that Defendant Harris "put [him] in the S[HU]" on June 15, 2013 and insists that his "constitutional rights were violated."  (Compl. § II.) Otherwise there is no information regarding his confinement, such as the date of his release from SHU or the circumstances of his confinement during that time.  Thus unable to ascertain "[b]oth the conditions and their duration" from the Complaint, the Court cannot discern whether Plaintiff's confinement in SHU constituted an "atypical and severe hardship."  *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (noting that "[b]oth the conditions and their duration must be considered" in order to "determin[e] whether a confinement in SHU rises to the level of 'atypical and severe hardship'" (citing, inter alia, *Ortiz*, 323 F.3d at 195)); *Arce*, 139 F.3d at 335 ("[T]he degree and duration of an inmate's restraint are the key considerations to determine the existence of a state-created liberty interest.").  This due process claim is accordingly dismissed, though Plaintiff will have an opportunity to amend his Complaint and provide the requisite details.

### b.  Destruction of Grievances

The Second Circuit has reaffirmed "that inmates must be permitted free and uninhibited access to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers."  *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (alterations and internal quotation marks omitted).  In fact, "intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and [§] 1983 are

intended to remedy." *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987).  Yet, "[t]o establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).  This "actual injury" requires that the defendant's conduct *did, in fact, hinder* the efforts of the plaintiff to pursue a legal claim.  *See id.* at 314–15; *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A] plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alterations and internal quotation marks omitted)).

In the instant Action, Plaintiff alleges that some grievances he filed "were thr[own] away by other [sergeants] captains."  (Compl. § IV.)[3]  The Complaint further alleges that he informed

---

[3] To the extent Defendants would rely on this fact to assert the affirmative defense of failure to exhaust administrative remedies, (*see* Defs.' Reply Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Reply.") 3 (Dkt No. 72) (asserting that "the [C]omplaint does not indicate that Plaintiff exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S. C. Section 1997 e(a)")), the Court notes that an inmate's failure to exhaust may be justified where prison officials prevented him from filing or appealing a grievance.  *See, e.g.*, *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) ("A prisoner may invoke the doctrine of estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures." (internal quotation marks omitted)); *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (observing that an inmate's failure to exhaust administrative remedies may be justified where prison officials prevented him from complying with grievance procedures or "fail[ed] to timely advance the inmate's grievance"); *Ferguson v. Bizzario*, No. 09-CV-8106, 2010 WL 4227298, at *7 (S.D.N.Y. Oct. 19, 2010) (holding the plaintiff's allegation "that correction officers either prevented or discouraged him from filing his complaint on the same day the event occurred . . . rais[es] estoppel as a second potential excuse for nonexhaustion"); *but see Rosado v. Fessetto*, No. 09-CV-67, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse his exhaustion requirement."), *adopted by* 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (holding that the "plaintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"), *aff'd*, 178 F. App'x 39 (2d Cir. 2006).

Defendants Andrews and Middleton of his claims, but "[t]hey took them and threw them away."

(*Id.*)  Courts, however, have consistently found that "[m]ere delay in being able to work on one's

legal action or communicate with the courts does not rise to the level of a constitutional

violation." *Davis*, 320 F.3d at 352 (internal quotation marks omitted); *see also Smith v.

O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995) ("At best, [the] plaintiff's allegation that his

'law work' was destroyed supports the conclusion that he was temporarily inconvenienced by the

loss of his papers . . . .  While such inconvenience is understandably frustrating, it does not

violate a constitutional right.").  Notwithstanding "the clear relationship between the right of

access to the courts and the right to petition for redress of grievances," *Franco*, 854 F.2d at 589,

Defendants' actions, if true, would not satisfy the requirement for "actual injury," given that

Plaintiff has successfully filed this Action against Defendants.  In other words, the alleged

conduct stood as more of an "inconvenience," and Plaintiff's ability to ultimately pursue his

legal claims in this Court necessarily precludes a constitutional claim based on denial of access

---

In any event, because the failure to exhaust administrative remedies in compliance with the PLRA is an affirmative defense, it "may be waived by a defendant, or forfeited by failure to raise the defense." *Arnold v. Goetz*, 245 F. Supp. 2d 527, 532 (S.D.N.Y. 2003) (internal quotation marks omitted); *cf. Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (affirming that exhaustion is excused where the "defendants have either waived the defense of failure to exhaust or acted in such a[] way as to estop them from raising the defense" (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).  Defendants, therefore, likely waived this argument by failing to raise it in the instant Motion. *See Santos v. City of N.Y. DOC*, No. 10-CV-3159, 2012 WL 554463, at *7 n.5 (S.D.N.Y. Jan. 19, 2012) (declining to "address whether [the] plaintiff has adequately exhausted his administrative remedies under the [PLRA] because [the] defendants have not asserted any such argument and have, therefore, waived any defense based on a failure to exhaust"), *adopted sub nom. Santos v. City of N.Y.*, 2012 WL 565987 (S.D.N.Y. Feb. 21, 2012); *Carter v. Rivera*, No. 07-CV-4317, 2010 WL 3000710, at *2 n.1 (E.D.N.Y. June 22, 2010) (noting "the defendants likely waived this [failure-to-exhaust] argument by failing to raise it as a motion to dismiss at the outset of the litigation"), *adopted by* 2010 WL 3000721 (E.D.N.Y. July 28, 2010).

to the courts.  Therefore, absent any allegation that Defendants' destruction of the grievances

caused harm, the Complaint cannot sustain an action under § 1983 on that ground.[4]

### c.  Deprivation of Property

Plaintiff alleges that Defendant Andrews "stole his personal property."  (Compl. § II.)[5]

However, "an unauthorized intentional deprivation of property by a state employee does not

constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation

remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Acevedo*

*v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *13 (S.D.N.Y. Sept. 29, 2014) (same).[6]  In

fact, "the state's action is not complete unless and until it provides or refuses to provide a

suitable post[-]deprivation remedy."  *Acevedo*, 2014 WL 5015470, at *13 (quoting *Hudson*, 468

U.S. at 533).  In applying this doctrine, "the Second Circuit has determined that 'New York in

---

[4] Although Plaintiff fails to state a claim for relief that Defendants violated his constitutional right to access the courts, his allegations, if true, are unsettling.

[5] In his Prayer for Relief, Plaintiff alleges violation of his constitutional rights under the Fourth Amendment.  (*See* Compl. § V.)  The Court, however, finds no allegations in the Complaint that can support such a claim.  The argument most closely relating to the Fourth Amendment's guarantee for individuals "to be secure in their persons" is Plaintiff's allegation that Defendant Andrews "stole [his] personal property."  (Compl. § II.)  Thus, "in interpret[ing] [the Complaint] to raise the strongest arguments that [it] suggest[s]," *Sykes*, 723 F.3d at 403 (internal quotation marks omitted), the Court construes that allegation to constitute a claim for unauthorized deprivation of property by a state employee under the Fourteenth Amendment, *West v. City of N.Y.*, No. 13-CV-5155, 2014 WL 4290813, at *6 (S.D.N.Y. Aug. 28, 2014) (construing pro se plaintiff's "claim to allege . . . a deprivation of personal property without due process of law in violation of the Fourteenth Amendment").

[6] The Second Circuit has explained that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."  *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (internal quotation marks omitted).  However, "when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing . . . [such that] the availability of post-deprivation procedures will not, ipso facto, satisfy due process."  *Id.* (italics omitted).

fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'" *Id.* (italics omitted) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)); s*ee also Malik v. City of N.Y.*, No. 11-CV-6062, 2012 WL 3345317, at *11 (S.D.N.Y. Aug. 15, 2012) ("New York provides such an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, and conversion."), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).  District courts thus routinely dismiss claims by inmates who assert that they were deprived of property by corrections officers.  *See, e.g.*, *West*, 2014 WL 4290813, at *6 (holding "the deprivation of [the inmate's] property interest in his mail is not a cognizable constitutional injury" given the availability of "adequate state post-deprivation remedies" under New York law (internal quotation marks omitted)); *JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *32 (S.D.N.Y. Apr. 24, 2014) (dismissing an inmate's deprivation of property claim because "the existence of an adequate post-deprivation state remedy precludes a due process claim under § 1983"), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *6 (S.D.N.Y. Mar. 23, 2012) (dismissing an inmate's claim because "a prison's loss of an inmate['s] property . . . will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available" (internal quotation marks omitted)).

Here, the Complaint includes only the bare allegation that Defendant Andrews "stole [Plaintiff's] personal property."  (Compl. § II.)  Plaintiff provides no additional details as to that claim and makes no allusion to a facility-wide practice.  Because the Complaint thus suggests the deprivation of property was "effected through random and unauthorized conduct of a state employee"—as opposed to "established state procedures"—Plaintiff has an adequate post-deprivation remedy under state tort law.  *Hudson*, 468 U.S. at 532–33.  Consequently, he cannot

sustain a § 1983 claim based on the deprivation of his personal property.  *See Franco*, 854 F.2d at 588 (noting that the "mere deprivation of personal property would not rise to the level of a constitutional injury").

The Complaint, therefore, fails to state any viable claim under the Fourteenth Amendment.

### 3.  *Monell* Claim

While the Complaint includes the County as a Defendant in the instant Action, Plaintiff has not alleged *any* facts to support such a claim.  It is well established that a municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (italics omitted).  Rather, to prevail on a § 1983 claim against a municipal employer, a plaintiff must show that "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Plaintiff's allegations target Defendants Vega, Ficorotta, Middleton, Harris, Andrews, and Gibson, and "he makes no assertion that the actions of [these individuals] were the result of a policy or procedure instituted by the [County], which is a predicate for municipal liability under [§] 1983."  *Laster v. Mancini*, No. 07-CV-8265, 2013 WL 5405468, at *32 (S.D.N.Y. Sept. 25, 2013).  Indeed, the Complaint includes no mention whatsoever of a County policy or custom that caused any of Plaintiff's alleged injuries.  *See Weiss v. Dep't of Educ. of City of N.Y.*, No. 09-CV-1689, 2012 WL 1059676, at *12 (S.D.N.Y. Mar. 29, 2012) (noting that an allegation "of a municipal policy or custom" is "a necessary predicate for municipal liability under [§] 1983").  In recognizing this fatal defect, the Court reemphasizes that the fact Plaintiff proceeds pro se in this Action "does not relieve him of the duty to adequately plead the elements of a municipal

liability claim." *West*, 2014 WL 4290813, at *7 (citing *Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011)).

Because the Complaint "falls far short of what *Monell* and its progeny require," any claims against the County are thereby dismissed without prejudice. *See id.* at *8.

### 4.   Other Federal Claims

Plaintiff's Complaint suggests that Defendants engaged in discrimination, committed hate crimes, and violated the ADA.  (*See* Compl. § V.)  While there "is an obligation on the part of the [C]ourt to make reasonable allowances" when reviewing pro se submissions, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks omitted), more than bare legal conclusions are nonetheless required for these claims to survive Defendants' Motion, *see Iqbal*, 556 U.S. at 678–79.  Plaintiff here does not offer anything more.

For one, the Complaint fails to allege sufficient facts pointing to conduct by Defendants that conceivably could constitute hate crimes or discrimination.  (*See generally* Compl. §§ II, V.) "Naked assertions of . . . discrimination, without any supporting facts, are insufficient to state a [constitutional] claim."  *Gaddy v. Waterfront Comm'n*, No. 13-CV-3322, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014); s*ee also Jackson v. Cty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[B]ald assertions of discrimination . . . unsupported by any comments, actions, or examples . . . from which [the court] could infer that the defendants possessed a discriminatory . . . motive are . . . insufficient to survive a motion to dismiss.").  Moreover, "[a] complaint based upon a violation of [§] 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law."  *Hernandez v. Sposato*, No. 12-CV-2530, 2014 WL 3489818, at *4 (E.D.N.Y. July 9, 2014).

Plaintiff, however, fails to put forth "any meaningful comments, actions, or examples of similarly-situated persons outside of [his] protected class being treated differently." *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014) (holding that "the [p]laintiff's bald assertions of discrimination—unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of the [p]laintiff's protected class being treated differently— are insufficient to survive a motion to dismiss"); s*ee also Lucas v. Apple Food Serv. of N.Y., LLC*, No. 15-CV-4007, 2015 WL 6507495, at *3 (E.D.N.Y. Oct. 27, 2015) (dismissing claims of discrimination where the "plaintiff does not identify any other similarly situated employee outside of [the] plaintiff's protected class who was treated differently"); *Vega v. Artus*, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (finding the plaintiff's general allegations that defendants discriminated against him insufficient to state an equal protection violation, absent allegations of disparate treatment). In fact, the only allegation related to a protected class is that Defendant Ficorotta "called [him] a nigger." (Compl. § II.) This, at best, alleges verbal harassment, which, as discussed above, cannot sustain a § 1983 claim. *See Purcell*, 790 F.2d at 265 (finding the plaintiff's allegation that various prison officials called him names on one occasion failed to state a claim under § 1983). Without any factual support for a plausible claim, the Court disregards Plaintiff's bare declaration of discrimination and hate crimes. *See Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 415 (W.D.N.Y. 2010) (dismissing § 1983 cause of action where the plaintiff failed to "set forth facts that make his [discrimination] claim at least plausible").

And so it goes for Plaintiff's claimed violation of the ADA as well. (*See* Compl. § V.) The Complaint also offers no allegation that Plaintiff suffered from any sort of disability, let alone a specific "physical or mental impairment" within the purview of the ADA. *See* 42 U.S.C.

§ 12102(1)(A).[7]  While Title II of the ADA does apply to inmates in state prisons, *see Penn.*

*Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998), a plaintiff must show, inter alia, that "he or

she is a qualified individual with a disability" in order to state a claim under that provision, *Allah*

*v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005) (internal quotation marks omitted).

Plaintiff has not done that here, thereby again failing to plausibly plead any such cause of action.

*See O'Diah v. Fischer*, No. 08-CV-941, 2012 WL 987726, at *20 (N.D.N.Y. Feb. 28, 2012)

(granting motion to dismiss ADA claims where the plaintiff "has failed sufficiently to allege that

he is suffering from any sort of impairment or disability"), *adopted by* 2012 WL 976033

(N.D.N.Y. Mar. 22, 2012); *O'Diah v. Mawhir*, No. 08-CV-322, 2010 WL 6230937, at *17

(N.D.N.Y. Dec. 14, 2010) (granting motion to dismiss ADA claims where the plaintiff "presents

no evidence of any disability at all"), *adopted by* 2011 WL 933846 (N.D.N.Y. Mar. 16, 2011).

As Plaintiff's recitation of the names of various federal claims has not "nudged [his]

claims across the line from conceivable to plausible," *Twombly*, 550 U.S.  at 570, these causes of

action must be dismissed.

###     5.  State Claims

Plaintiff also prays for relief on the grounds of negligence, libel, and fraud.  (*See* Compl.

§ V.)[8]  The Complaint, however, fails to state a claim upon which relief could be granted.

---

[7] In his Request to Proceed In Forma Pauperis, Plaintiff does state that he is "disabled." (Dkt. No. 1.)  However, even if the Court were to consider this extraneous document, such a vague assertion would not suffice.

[8] It is worth noting that neither negligence nor libel "set forth a federal constitutional tort claim" that can be pursued under § 1983.  *Rathbun v. DiLorenzo*, 438 F. App'x 48, 51 (2d Cir. 2011); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."); *Boddie*, 105 F.3d at 862 (holding that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report"); *Phillips ex rel. Green v. City of N.Y.*, 453 F. Supp. 2d 690, 739–40 (S.D.N.Y. 2006) ("[O]rdinary

For one, Plaintiff alleges that Defendant Andrews "falsified criminal documents and a[ssa]ssinated [his] character maliciously."  (*Id.* § II.)  While in federal court a plaintiff "need only plead [his or] her claim with sufficient particularity to put the defendants on notice, as required by Rule 8 of the Federal Rules of Civil Procedure," *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 537 (S.D.N.Y. 2015) (internal quotation marks omitted); *see Sanders-Peay v. N.Y.C. Dep't of Educ.*, No. 14-CV-4534, 2014 WL 6473507, at *4 (E.D.N.Y. Nov. 18, 2014) (noting that New York State's strict pleading requirement for libel "does not govern in federal court"), Plaintiff's single unsubstantiated allegation cannot meet that threshold.  A "complaint must at least identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Germain*, 111 F. Supp. 3d at 537 (internal quotation marks omitted).  Plaintiff clearly fails to do so here.

Moreover, Plaintiff puts forth no allegations relating to negligence, nor does he allege who might be personally involved in this tort.  *See Taylor v. internet.com/ethernet*, No. 12-CV-2025, 2012 WL 1821416, at *2 (E.D.N.Y. May 18, 2012) (dismissing complaint where the "plaintiff's claims of negligence, misconduct and harassment, among others, are conclusory and do not provide facts to support his conclusions or name the individuals personally involved in these claims").  Even considering the leniency afforded to pro se plaintiffs, there is simply no way to construe such a vague label as stating a claim against any Defendant.

The same is true for Plaintiff's bare declaration of fraud, which falls well below the more rigorous requirements of Federal Rule of Civil Procedure 9(b).  *See Nakahata v. N.Y.-*

---

negligence by itself could not establish a cause of action under [§] 1983." (internal quotation marks omitted)).

*Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) ("Allegations of fraud are subject to a heightened pleading standard.").[9] The Complaint's mere mention of the word undoubtedly fails to "state with particularity the circumstances constituting fraud." *Id.* (internal quotation marks omitted).

Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted in part and denied in part. With respect to the excessive force claims alleged against Defendants Vega and Gibson, the Motion is denied. The Motion is granted, without prejudice, as to Plaintiff's other claims.

Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Order, addressing the deficiencies outlined herein. He is advised that an amended complaint replaces the Complaint currently pending before the Court in its entirety and therefore must include all of his claims and factual allegations against all Defendants against whom he wishes to proceed. The amended complaint must be captioned "First Amended Complaint" and bear the same docket number as this Order.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 40).

SO ORDERED.

DATED:     March 9, 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[9] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

24